UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80693-CIV-MARRA/MATTHEWMAN

THERESA RIVERNIDER,

    Plaintiff,

vs.

DAVID L. BROUGH and BROUGH,
CHADROW & LEVINE, P.A., a
Florida corporation,

    Defendants.
_____/

## ORDER AND OPINION ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment [DE 12] and Defendants' Motion for Final Summary Judgment [DE 13]. The Court has carefully considered the motions and responses, and is otherwise fully advised in the premises.

## Introduction

On or about August, 2009, Theresa Rivernider ("Plaintiff") deeded her home in the Buena Vida community to Charles Lincoln ("Lincoln"). Lincoln and Plaintiff agreed that Plaintiff would not have to leave her home and she would not have to pay rent or any other consideration for her continued use and sole occupancy of the property.

Lincoln became delinquent in paying assessments to the homeowner's Buena Vida Master Association ("Association"). The Association sent a "demand for rents

pursuant to Florida Statutes § 720.3085(8)" to Plaintiff.  Plaintiff filed a complaint in state court against the law firm which represented the Association alleging that the law firm's attempts to collect from her fees owed to the Association by Lincoln violated the Federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count I), and the Florida Consumer Collection Practices Act, ("FCCPA"), Fla. Stat. §§ 559.72 (Count II).  The letter at issue reads as follows:

April 23, 2012

**Via Regular Mail and Certified Mail - Return Receipt Requested**

Ms. Therasa Rivernider and all Other Tenants In Occupancy
8525 Via Brillante
Wellington, FL 33411

Re:   *Buena Vida Master Association, Inc.*
       *DEMAND FOR RENTS PURSUANT FLORIDA STATUTES § 720.3085(8)*
       *Our File No. 413.0064*
       *Property Address: 8525 Via Brilliante Wellington, FL 33411*

Dear Ms. Rivernider and All Other Tenants In Occupancy:

Please be advised that the undersigned law firm represents Buena Vida Master Association, Inc. (the "Association").

Pursuant to section 720.3085(8), Florida Statutes, we demand that you make your rent payments directly to the homeowners' association and continue doing so until the association notifies you otherwise.  Payment due the homeowner's association must be made payable to Buena Vida Master Association, Inc., may be in the same form as you paid your landlord and must be sent by United States mail or hand delivery to:

   Buena Vida Master Association, Inc.
   c/o Castle Management
   12270 SW 2nd Street, #200
   Plantation, FL 33325

Your obligation to pay your rent to the Association begins immediately, unless you have already paid rent to your landlord for the current period before receiving this notice.  In that case, you must provide the Association written proof of your payment within 14 days after receiving this notice and your obligation to pay rent to the Association would then begin with the next rental period.  Pursuant to section 720.3085(8), Florida Statutes, your payment of rent to the Association gives you complete immunity from any claim for the rent by your landlord.

Pursuant to the above cited statute, please be advised that should you fail to comply with your statutory obligation to the Association, the Association has the right to commence an eviction action against you.  Please note that this letter and your statutory obligation herein does not create a landlord-tenant relationship between yourself and the Association.  Provided that you comply with this demand, the terms and conditions of your lease shall otherwise remain in full force and effect.  Nothing in this notice shall be construed as a waiver of any of the Association's other rights and remedies as provided in the Association's governing documents and Florida law.  If you have any questions or concerns with respect to the contents of this notice, please contact the Association.

Very truly yours,

David L. Brough, Esq.

cc: Charles Lincoln; John Skrandel, Esq.

**THIS NOTICE IS BEING GIVEN PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) TITLE 15 USC UNLESS WITHIN THIRTY DAYS AFTER RECEIPT OF THIS CORRESPONDENCE YOU DISPUTE THE VALIDITY OF THE AMOUNTS DUE OR ANY PORTION THEREOF, THE AMOUNT DUE WILL BE ASSUMED TO BE VALID.  IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THE THIRTY DAY PERIOD THAT THE AMOUNTS DUE OR ANY PORTION THEREOF IS DISPUTED, THIS OFFICE WILL OBTAIN VERIFICATION OF THE AMOUNT DUE AND VERIFICATION WILL BE MAILED TO YOU BY THIS OFFICE.  WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  IF YOU REQUEST PROOF OF THE DEBT OR NAME AND ADDRESS OF THE ORIGINAL CREDITOR WITHIN THE THIRTY DAY PERIOD THAT BEGINS WITH YOUR RECEIPT OF THIS LETTER, THE LAW REQUIRES US TO SUSPEND OUR EFFORTS TO COLLECT THE DEBT UNTIL WE MAIL THE REQUESTED INFORMATION TO YOU.**

DE 1-1 at 7 of 35.

Defendants removed the action to this Court and cross-motions for summary judgment have been fully briefed.

**Undisputed Facts**

1. For some period of time before August 2009, Plaintiff owned and lived in a unit at 8525 Via Brilliante, Wellington, Florida ("the Unit").

2. In August 2009, Plaintiff transferred ownership of the Unit to Charles Lincoln.

3. Lincoln permitted Plaintiff to continue to reside in the Unit rent free.

4. There was no written lease between Plaintiff and Lincoln, the owner of the Unit, and Plaintiff did not pay rent to Lincoln.

5. Plaintiff was not obligated to pay homeowner's assessments to the Association, but the Unit owner, Charles Lincoln, was so obligated.

6. Lincoln became delinquent in paying homeowner's assessments owed to the Association.

7. Defendants were retained by Buena Vida Master Association as counsel to handle the Association's collections and represent the Association in other legal matters.

8. The Association directed Defendants to determine if there was a tenant residing at the Unit, and if so, to send a rent demand letter to the tenant pursuant to Fla. Stat. § 720.3085(8) requesting that the tenant redirect rent payments to the Association.

9. Defendants sent a letter to Plaintiff dated April 23, 2012, requesting that

Plaintiff pay the rent due to her landlord directly to the Association pursuant to Fla. Stat. § 720.3085(8).

10. At the time the April 23, 2012 letter was sent, Defendants' knew that there was no written lease between Plaintiff and Lincoln, and that Plaintiff did not pay rent to Lincoln. They learned these facts in Plaintiff's October 31, 2011 response to interrogatories, months before they sent the April 23, 2012 rent demand letter.[1] DE 12 at 6-7, Ex. E.

11. Defendants' April 23, 2012 letter to Plaintiff was a demand that she pay to the Association rent she owed to the owner of her residence pursuant to Fla. Stat. § 720.3085(8).

12. Defendants never demanded or claimed that Plaintiff was obligated to pay the delinquent assessments owed by Charles Lincoln to the Association.

13. Defendants sent a copy of its April 23, 2012 letter to Plaintiff's attorney John Skrandel and to the Unit owner Charles Lincoln.

14. A part of Defendant's business is to collect amounts owed to others.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] These interrogatories were pursuant to a lawsuit filed by the Association against Lincoln, the unknown spouse of Lincoln, and Theresa Rivernider (Plaintiff in this case). The Association sought to foreclose a claim of lien for assessments. *See* DE 13-3, Ex. 3 to Defendant's Motion for Summary Judgment.

matter of law." Federal Rules of Civil Procedure 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  When reviewing a summary judgment motion, the Court does not "make credibility determinations, but instead believe[s] the evidence of the non-movant ... and all justifiable inferences are to be drawn in [her] favor." *Evans v. Stephens*, 407 F.3d 1272, 1277 (11th Cir. 2005) (citation and internal quotation marks omitted) (ellipses in original).

## DISCUSSION

### A.   Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act of 1978 is a federal statute providing a measure of consumer protection against abuses by third-party debt collection agencies or other persons or entities specified by statute.  Congress passed the FDCPA to protect consumers from harassing or deceptive conduct in the collection of a debt. 15 U.S.C. §§ 1692d, 1692e; *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998).  Congress enacted the FDCPA after finding "abundant evidence of the use of abusive, deceptive, and unfair debt practices by many debt collectors." *Id.* § 1692(a).  The FDCPA states, in part, that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

The FDCPA permits courts to impose civil liability on any person or entity subject to the statute that is found to have violated its provisions.  *See* 15 U.S.C. § 1692k(a).  The FDCPA establishes minimal standards for debt collector conduct, defines abusive and deceptive practices, and provides for specific consumer rights

and remedies.  *See* 15 U.S.C. §§ 31-49, 50-53, 66.  The statute's proscribed debt collection activities include actions that violate a consumer's privacy, or constitute harassment, abuse, or false and deceptive representations, or unfair and unconscionable collection efforts.  *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

To establish a claim under the FDCPA, a plaintiff must demonstrate that (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the statute; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.  *Eke v. FirstBank Florida,* 779 F. Supp. 2d 1354, 1357 (S.D. Fla. 2011).

(1)     The Object of Collection Activity Arising from a Consumer Debt

To recover under either the FDCPA or the Florida Consumer Collection Practices Act (FCCPA), the Florida analogue to the FDCPA, Plaintiff must make a threshold showing that the money being collected qualifies as "debt.[2]"  15 U.S.C.

---

[2]  The FDCPA defines debt as follows:
> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).  The FDCPA also defines "consumer" in the following manner:
> The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

15 U.S.C. § 1692a(3).

§ 1692 *et seq.*

While Defendants' letter does not explicitly reference a debt or state that Plaintiff is obligated to pay delinquent maintenance or assessment fees, the intent and purpose of the letter was to recoup Lincoln's delinquent assessment fees. The collection of homeowner's assessment fees may properly be considered a debt.[3] For purposes of this Order the Court will assume, without deciding, that the rent money requested from Plaintiff was an attempt to collect a debt.

(2)     Debt Collector as Defined by the Statute

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or

---

[3] *See Williams v. Edelman,* 408 F. Supp. 2d 1261, 1266-68 (S.D. Fla. 2005) (condominium assessments are "debts" under the FDCPA); *Fuller v. Becker & Poliakoff, P.A.,* 192 F. Supp. 2d 1361, 1368 (M.D. Fla. 2002) (maintenance assessments that the HOA sought to collect in Defendants' letters are debts subject to the FDCPA); *Agan v. Katzman & Korr, P.A.*, No. 03-62145, 2004 WL 555257, at *1 (S.D. Fla. Mar.16, 2004) (condominium assessments are "debts" under the FDCPA); *see also Ladick v. Van Gemert*, 146 F.3d 1205 (10th Cir. 1998) (holding that condominium assessments are debts subject to the FDCPA); *Garner v. Kansas*, 1999 WL 262100 (E.D. La. 1999) (holding that condominium assessments are debts subject to the FDCPA); *Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477, 482 (7th Cir. 1997) (past-due assessments owed to condominium and homeowners association are "debts" under the FDCPA); *Thies v. Law Offices of William A. Wyman*, 969 F.Supp. 604 (S.D. Cal. 1997) (holding that homeowners' maintenance assessments are debts under the FDCPA); *Dorsey v. Morgan*, 760 F.Supp. 509 (D. Md. 1991) (holding that campground membership obligations are debts for the purposes of the FDCPA); *but see Bryan v. Clayton*, 698 S.2d 1236 (Fla. Dist. Ct. App. 1997), *rev. denied,* 707 So.2d 1123 (Fla.1998), *cert. denied*, 524 U.S. 933 (1998) (the FDCPA and FCCPA's definition of debt excludes maintenance assessments owed to a homeowner's association).

indirectly, debts owed or due or asserted to be owed or due another.  15 U.S.C. § 1692a(6).  While it is undisputed that a part of Defendant's business is to collect amounts owed to others, it is arguable that Defendants, acting as attorneys-at-law for the Association, are not properly characterized as debt collectors under the facts of this case.  *See Eke v. Firstbank Florida*, 779 F. Supp. 2d 1354, 1358 (S.D. Fla. 2011) (legislative history of the FDCPA indicates that the term "debt collector" is not intended to include law firm acting in capacity of attorneys-at-law while demanding rent).  Nonetheless, the Court will assume, without deciding, for purposes of this Order, that Defendants qualify as debt collectors under the FDCPA.

(3)     <u>An Act or Omission Prohibited by the FDCPA</u>

Congress enacted the FDCPA in response to "abundant evidence" of debt collector abuse, deception, and unfair practice when attempting to collecting debts, and because inadequate consumer protections existed under both federal and state law at that time.  15 U.S.C.A. § 1692.  The FDCPA balances the interests of both consumers and debt collectors and seeks to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C.A. § 1692.

As noted in a Senate Report, No. 95382 (1977), specific consumer abuses addressed by the FDCPA include:

> obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

S. Report No. 95382, 95th Congr., Sess., reprinted in 1977 U.S.C.C.A.N. §§ 1695, 1696-99.

Plaintiff asserts that Defendants' letter qualifies as an "abusive debt collection practice" because "regardless of the fact that [Plaintiff] did not owe rent or pay rent[4] to the property owner [Plaintiff felt she] had to pay something to the association or [she] would be evicted from [her] home. And that is exactly what the Defendants intended when they sent this collection letter to Mrs. Rivernider. The fact the Defendants chose not to explain to Mrs. Rivernider in this letter that she did not have to pay rent and that she would not be evicted or in any way penalized because she did not owe rent to the property owner for her use and occupancy of this property proves the Defendants attempted deception and the violation of her rights." (DE 12 at 8).

To accomplish the consumer protection purpose of the FDCPA, courts apply a "least sophisticated" or "unsophisticated" consumer standard to analyze the

---

[4] The fact that Plaintiff did not pay rent and Defendants had been informed earlier of this fact does not make the sending of the letter abusive. Such a rent-free arrangement could change, and the letter would serve to put Plaintiff on notice that if she does begin to pay rent, she must contact the Association.

protections of the FDCPA.  15 U.S.C.A. § 1692e; *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985).  Plaintiff asserts that Defendants' statement "should you fail to comply with your statutory obligation to the Association [to pay your rent to the Association as opposed to your landlord], the Association has the right to commence an eviction action against you" is deceptive under the law because an unsophisticated consumer who is not paying rent to her landlord might conclude that eviction would be imminent if she did not begin paying rent to the Association.

"'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194-95 (11th Cir. 2010) quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.")  However, the test has an objective component in that "[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care [on the part of the recipient]." *LeBlanc*, 601 F.3d at 1194, quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996).  Although established to ease the lot of the naive, the standard does not go so far as to provide solace to the willfully blind or non-observant.  Even the least sophisticated debtor is bound to read collection notices in their entirety.

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294 (3d Cir. 2008).

Upon a review of the letter in question, the Court concludes that the least sophisticated consumer would not conclude that eviction would be imminent if she failed to pay to the Association rent she did not owe to the owner of her unit. Such a letter might cause the recipient to advise the Association that she was not obligated to pay rent to the owner of the unit, and that the free rental arrangement between her and the owner continued to be in effect. However, this is not the type of conduct the statute was intended to prohibit.

Eviction notices that misstate a delinquent tenant's obligations, threaten unlawful action, or falsely imply governmental affiliation are deceptive debt collection practices. *See* 15 U.S.C. § 1692e(1) (false implication that collector is government-affiliated), 1692e(4) (false representation of creditor's remedies), 1692e(5) (threats to take actions that cannot legally be taken or that are not intended to be taken), 1692e(9) (simulated governmental documents), 1692e(10) (other false representations or deceptive means), 1692e(13) (simulated process). In this case, the complained of threat, possible eviction , is neither deceptive nor unlawful. Should Plaintiff ever become obligated to pay rent, she could face eviction if she did not remit her rent payments to the Association. Florida Statute § 720.3085(8)(a) provides that

> If the parcel is occupied by a tenant and the parcel owner is delinquent in paying any monetary obligation due to the association, the association may demand that the tenant pay to the association the

> subsequent rental payments and continue to make such payments until all the monetary obligations of the parcel owner related to the parcel have been paid in full to the association and the association releases the tenant or until the tenant discontinues tenancy in the parcel.

And Florida Statute § 720.3085(8)(d) provides that

> The association may . . . sue for eviction under ss. 83.59-83.625 as if the association were a landlord under part II of chapter 83 if the tenant fails to pay a monetary obligation.

As counsel for the Association, Defendants sent the subject letter in the form legally authorized by Florida Statute § 720.3085(8) demanding that Plaintiff redirect her rent payments due the owner to the Association. Florida law not only authorizes the type of letter that is the subject of this lawsuit, but it provides the form language to be used.[5]

---

[5] Florida Statutes § 720.3085(8) provides:

1. The association must provide the tenant a notice, by hand delivery or United States mail, in substantially the following form:

> Pursuant to section 720.3085(8), Florida Statutes, we demand that you make your rent payments directly to the homeowners' association and continue doing so until the association notifies you otherwise.
>
> Payment due the homeowners' association may be in the same form as you paid your landlord and must be sent by United States mail or hand delivery to  (full address) , payable to (name).
>
> Your obligation to pay your rent to the association begins immediately, unless you have already paid rent to your landlord for the current period before receiving this notice. In that case, you must provide the association written proof of your payment within 14 days after receiving this notice and your obligation to pay rent to the association would then begin with the next rental period.

Defendants' letter followed the form language from the statute, and added this language:

> Pursuant to the above cited statute, please be advised that should you fail to comply with your statutory obligation to the Association, the Association has the right

---

> Pursuant to section 720.3085(8), Florida Statutes, your payment of rent to the association gives you complete immunity from any claim for the rent by your landlord.

2.  A tenant is immune from any claim by the parcel owner related to the rent timely paid to the association after the association has made written demand.

(b) If the tenant paid rent to the landlord or parcel owner for a given rental period before receiving the demand from the association and provides written evidence to the association of having paid the rent within 14 days after receiving the demand, the tenant shall begin making rental payments to the association for the following rental period and shall continue making rental payments to the association to be credited against the monetary obligations of the parcel owner until the association releases the tenant or the tenant discontinues tenancy in the unit. The association shall, upon request, provide the tenant with written receipts for payments made. The association shall mail written notice to the parcel owner of the association's demand that the tenant pay monetary obligations to the association.

(c) The liability of the tenant may not exceed the amount due from the tenant to the tenant's landlord. The tenant shall be given a credit against rents due to the landlord in the amount of assessments paid to the association.

(d) The association may issue notice under s. 83.56 and sue for eviction under ss. 83.59-83.625 as if the association were a landlord under part II of chapter 83 if the tenant fails to pay a monetary obligation.  However, the association is not otherwise considered a landlord under chapter 83 and specifically has no obligations under s. 83.51.

Fla. Stat. § 720.3085.  Payment for assessments; lien claims.  Amendments to this Act, to take effect July 1, 2013, do not apply to this section.  *See* HOMEOWNERS ASSOCIATIONS—MANAGERS AND MANAGEMENT—DISCIPLINARY PROCEEDINGS, 2013 Fla. Sess. Law Serv. Ch. 2013-218 (C.S.H.).

to commence an eviction action against you.  Please note that this letter and your statutory obligation herein does not create a landlord-tenant relationship between yourself and the Association.  Provided that you comply with this demand, the terms and conditions of your lease shall otherwise remain in full force and effect.  Nothing in this notice shall be construed as a waiver of any of the Association's other rights and remedies as provided in the Association's governing documents and Florida law.  If you have any questions or concerns with respect to the contents of this notice, please contact the Association.

This paragraph is consistent with provisions of the statute.  Pursuant to §720.3085(8)(d), the law permits the Association to provide notice and to sue for eviction under Fla. Stat. §§ 83.59-83.625.

Viewing the letter through the eyes of a "least-sophisticated consumer," and making all reasonable inferences in Plaintiff's favor, the Court concludes, as a matter of law, that the subject letter, which tracked the language of Florida Statute § 720.3085(8), did not tend to mislead, deceive or threaten Plaintiff in violation of the law.  According, the Court will grant summary judgment on Count I in Defendant's favor.

B.     **Florida Consumer Collection Practices Act**

In Count II of her Complaint, Plaintiff alleges that Defendants' letter is violative of the Florida Consumer Collection Practices Act ("FCCPA").  Like its federal counterpart, the FCCPA includes a list of prohibited collection practices and provides a private cause of action.  *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1124 (11th Cir. 2004).  Count II alleges that Defendants violated §§ 559.72(9) and (18) of the FCCPA for contacting Plaintiff (through the rent demand letter) while knowing

Plaintiff was represented by counsel and for attempting to collect a debt that was not legitimate. [DE 1].

The FCCPA is modeled after the FDCPA.  *See* Fla. Stat. § 559.77(5) ("due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act"); *Trent v. Mortgage Elec. Registration Sys.*, 618 F. Supp. 2d 1356, 1360-61 (M.D. Fla. 2007), *affd* 288 F.App'x. 571 (11th Cir. 2008) (rationale espoused under FDCPA applied equally to FCCPA).  Because Plaintiff's claims under the FCCPA are identical to her claims under the FDCPA, all the same conclusions set forth above apply to Plaintiff's claims under the FCCPA.  Since Defendants did not violate the FDCPA by sending the rent demand letter to Plaintiff, the sending of the rent demand letter does not constitute a violation of the FCCPA, Fla. Stat. § 559.72(18)[6] as a forbidden communication with a debtor when Defendants knew that Plaintiff was represented by an attorney.  Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment [DE 12]

---

[6] The FCCPA provides, in pertinent part, that in collecting consumer debts, no person shall communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

Fla. Stat. § 559.72(18).

is denied and Defendants' Motion for Final Summary Judgment [DE 13] is granted.  In accordance with Fed. R. Civ. P. 58, final judgment will be entered by separate order.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of September, 2013.

_____
KENNETH A. MARRA
United States District Judge